**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 24-4563**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

QINBIN CHEN, a/k/a Ben Chen,

        Defendant - Appellant.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Rossie David Alston, Jr., District Judge.  (1:22-cr-00216-RDA-1)

---

Argued:  March 20, 2026                       Decided:  July 21, 2026

---

Before NIEMEYER, THACKER, and HARRIS, Circuit Judges.

---

Affirmed in part, reversed in part, vacated in part, and remanded by unpublished opinion. Judge Harris wrote the opinion, in which Judge Niemeyer and Judge Thacker joined.

---

**ARGUED**:  Cary Steven Greenberg, GREENBERG COSTLE, PC, Tysons Corner, Virginia, for Appellant. Zachary H. Ray, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF**: Lindsey Halligan, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

A jury convicted Qinbin Chen of multiple charges arising from an international fraud scheme involving gift and debit cards.  On appeal, Chen raises numerous challenges to his convictions and to a forfeiture imposed as part of his sentence.

We affirm in large part, finding no reversible error regarding most of Chen's convictions.  We do, however, reverse Chen's convictions for international money laundering, because the government did not present sufficient evidence that Chen used laundered funds to finance his unlawful activity.  And having reversed those convictions, we vacate Chen's sentence and remand for resentencing.

## I.

## A.

The criminal case against Chen stems from his role in an international fraud scheme that functioned as follows:  First, unidentified fraudsters abroad – for Chen's purposes, his "suppliers" – made contact with victims in the United States and, through deception, persuaded them to buy Walmart gift cards, often in amounts of thousands of dollars, and then send the suppliers the redemption codes on the backs of those cards.[1]  Almost immediately, the suppliers turned around and sold those redemption codes, which could be used to redeem the cards at Walmart stores, to online middlemen at a fraction of their face value.

---

[1] We refer to facts drawn from the trial record, viewed in the light most favorable to the government.  *See United States v. Dennis*, 19 F.4th 656, 660 (4th Cir. 2021).

Chen was one of these middlemen.  His role in the scheme was to purchase the gift-card redemption codes online and then have them redeemed at Walmart stores.  To do this, Chen hired runners, who sat in Walmart parking lots awaiting his instructions.  Within minutes of acquiring a redemption code, Chen would direct a runner to immediately enter the store, redeem the Walmart gift card, and use the funds to purchase brand-name gift cards for retailers like Apple and Nintendo.  And finally, Chen turned a profit by selling those brand-name gift cards to buyers abroad, often in bulk, at a price higher than the one he had paid his supplier for the Walmart redemption code.

Chen's role was critical to the success of the scheme, and speed was of the essence. There was always the risk that a victim would realize he or she had been scammed and call Walmart, which could cancel the victim's gift card and refund the purchase price.  But once a runner redeemed the Walmart gift card and put the proceeds into branded gift cards, it was too late; Walmart could not deactivate or otherwise control the branded cards sold at its stores.  So Chen ordered his runners to move quickly:  enter Walmart immediately upon receiving his call, avoid interactions with Walmart employees, keep a low profile, and redeem the cards as soon as possible.  Even that was not always enough; on occasion, a runner would try to redeem a Walmart gift card and find that its value had already been cancelled.

Chen did not limit himself to Walmart gift cards.  At times, he also acquired people's debit card information from a specific supplier.  In one instance charged in this case, Chen obtained a woman's debit card information and tried, unsuccessfully, to use it to purchase tires for himself.

3

**B.**

For his role in the scheme, Chen was indicted by a federal grand jury in the Eastern District of Virginia on multiple charges: one count of conspiracy to commit unauthorized access device fraud, *see* 18 U.S.C. § 1029(b)(2); three counts of unauthorized access device fraud, *see id.* § 1029(a)(2); one count of aggravated identity theft, *see id.* § 1028A; one count of conspiracy to commit money laundering, *see id.* § 1956(h); and two counts of international promotion money laundering, *see id.* § 1956(a)(2)(A). During a four-day jury trial, the government presented testimony from victims of Chen's suppliers, from Chen's runners, and from a Walmart investigator, among other witnesses. The government also introduced logs of messages between Chen and his suppliers and Chen and his buyers, to establish Chen's knowledge of the unlawful nature of the scheme. And the government put into evidence bank statements from Chen's United States bank accounts, documenting payments from Chen's overseas buyers into those accounts.

At the end of the government's case-in-chief, Chen moved under Rule 29 for a judgment of acquittal. *See* Fed. R. Crim. P. 29. The jury then convicted Chen of all charged offenses, and the district court denied Chen's motion. J.A. 1647. Chen subsequently renewed his motion, and, in the alternative, moved under Rule 33 for a new trial. *See* Fed. R. Crim. P. 33. The district court denied this motion as well. In its view, there was sufficient evidence to support each of Chen's convictions, and Chen's other arguments for a new trial, focused on the instructions given to the jury, were meritless because Chen invited the errors he complained of. J.A. 1682–85.

4

The district court sentenced Chen to a total of 84 months' imprisonment and three years of supervised release.  The court also ordered Chen to pay $45,368.19 in restitution and $800 in statutory assessments.  And finally, after Chen's sentencing, the court ordered the forfeiture of two of Chen's bank accounts.  Chen contested that forfeiture before the district court, arguing that by adjudicating the forfeiture issue after his sentencing, the court failed to follow the procedures set out in Rule 32.2, governing criminal forfeiture.  *See* Fed. R. Crim. P. 32.2.  The district court rejected this argument, and the forfeited bank accounts were used to satisfy Chen's financial obligations.

This timely appeal followed.

## II.

Chen challenges his convictions on multiple grounds, focusing primarily on the sufficiency of the evidence that he committed the charged crimes and the instructions given to the jury.  In general, we review the denial of a Rule 29 motion for judgment of acquittal de novo and the denial of a Rule 33 motion for a new trial for abuse of discretion.  *United States v. Smith*, 451 F.3d 209, 216 (4th Cir. 2006).  And "[a] defendant challenging the sufficiency of the evidence," as Chen does here, "faces a heavy burden." *United States v. Foster*, 507 F.3d 233, 245 (4th Cir. 2007), *abrogated on other grounds by United States v. Banks*, 29 F.4th 168 (4th Cir. 2022).  In assessing the sufficiency of the evidence, we must view all facts and inferences in the light most favorable to the government. *Id.*  Chen can only prevail on his sufficiency challenges if no "reasonable finder of fact could accept [the

5

evidence] as adequate and sufficient to support a conclusion of [his] guilt beyond a reasonable doubt." *Id.*

We find most of Chen's arguments to be without merit. Specifically, we affirm his convictions for unauthorized access device fraud, conspiracy to commit unauthorized access device fraud, aggravated identity theft, and conspiracy to commit international promotion money laundering. But we agree with Chen on one point and conclude that the evidence was insufficient to sustain his convictions for the substantive offense of international promotion money laundering. Accordingly, we vacate those two convictions and remand for resentencing.

**A.**

We begin with Chen's convictions for unauthorized access device fraud and conspiracy to commit that offense. Chen was charged with three counts of unauthorized access device fraud under 18 U.S.C. § 1029(a)(2), each centering on a different Walmart gift card – the "unauthorized access devices" in question – purchased by Chen from a supplier and redeemed by one of Chen's runners. The associated conspiracy charge under 18 U.S.C. § 1029(b)(2) is predicated on Chen's gift card transactions, as well, but also extends to Chen's purchase and use of people's debit card information.

Chen's sufficiency of the evidence argument for vacating these substantive and conspiracy convictions rests on one assertion: that the evidence was insufficient to prove

6

he trafficked the Walmart gift cards "knowingly and with intent to defraud," as is required under the unauthorized access device fraud statute. [2] 18 U.S.C. § 1029(a)(2). We disagree.

Chen's argument focuses on the "intent to defraud" element, which required the government to prove that Chen trafficked the Walmart gift cards at issue with the "specific intent to deprive one of something of value through a misrepresentation or other similar dishonest method." *United States v. Wynn*, 684 F.3d 473, 478 (4th Cir. 2012) (defining intent to defraud for mail and wire fraud statutes); *see also United States v. Bank-Davis*, 552 F. App'x 215, 216 (4th Cir. 2014) (per curiam) (applying analogous definition to bank and access device fraud statutes); *United States v. Klopf*, 423 F.3d 1228, 1240 (11th Cir. 2005) (applying analogous definition to access device fraud statute). [3] According to Chen, no jury could find that he acted with an intent to deprive through misrepresentation or

---

[2] The unauthorized access device fraud statute makes it a crime to, with the intent to defraud, knowingly traffic in or use one or more unauthorized access devices to obtain things of value in the aggregate of $1,000 or more within a one-year period and with an effect on interstate or foreign commerce. *See United States v. Blake*, 81 F.3d 498, 506 (4th Cir. 1996) (citing 18 U.S.C. § 1029(a)(2)). The associated conspiracy statute requires proof that an individual conspired amongst two or more people to commit unauthorized access device fraud and that at least one member of the conspiracy took an overt act in furtherance of the offense. 18 U.S.C. § 1029(b)(2). Aside from the intent to defraud, the remaining elements of these offenses are not in dispute.

[3] Chen also asserts the jury was improperly instructed on the intent to defraud element. But he concedes, as he must, that we review the challenged instruction for plain error only, because he did not object below. Indeed, Chen jointly proposed the instruction in question, so the invited error doctrine applies, as well, and ordinarily would foreclose Chen's challenge. *See United States v. Lespier*, 725 F.3d 437, 449–50 (4th Cir. 2013) (applying plain error review and invited error doctrine to instructional error invited by a defendant). But even putting all of this to one side, we have reviewed the challenged instruction and, read in full and in context, find no error, plain or otherwise, requiring reversal.

7

dishonesty. His *suppliers* may have used deception to obtain Walmart gift cards from their victims at the first step of the scheme, Chen says, but there is no evidence that he worked with them in doing so. And his conduct at the later steps of the scheme – his purchase of the redemption codes and his use of runners to redeem the Walmart cards and convert them to brand-name gift cards – did not involve misrepresentations or dishonesty.

Chen's argument mischaracterizes the unauthorized access device fraud statute and ignores relevant evidence supporting his convictions. The statute, 18 U.S.C. § 1029(a)(2), does not require a defendant to have been involved in fraudulently obtaining the unauthorized access devices in question – here, the Walmart gift cards. *See United States v. Blake*, 81 F.3d 498, 506 (4th Cir. 1996). The relevant criminal act is "traffic[king] in or us[ing]" the cards, 18 U.S.C. § 1029(a)(2), and not, as Chen would have it, deceiving people into purchasing them in the first instance. And there is no dispute that Chen trafficked the Walmart gift cards when he purchased the card numbers from the suppliers and forwarded them to his runners. Our inquiry, instead, focuses on Chen's mental state: Did he act with an intent to defraud the victims – that is, to deprive them of something of value through a misrepresentation, *see Wynn*, 684 F.3d at 478 – when he trafficked the card numbers? The jury found that he did, and in our view, there is ample evidence to support that verdict.

First, from messages Chen exchanged with his suppliers and his buyers, the jury could infer Chen knew that his suppliers obtained the Walmart gift cards by illegally deceiving their victims. Those messages made clear that Chen was not an innocent buyer of what he believed to be legally obtained gift cards but was instead aware that the cards

8

were procured through some unlawful means, subjecting him to "the risk of being arrested" in connection with their redemption at Walmart. J.A. 1620. We believe it would be reasonable for a jury to infer from these messages that Chen knew the cards in which he was trafficking were acquired by his suppliers through some form of deceit.

Second, the jury could infer that Chen acted with the intent to deprive these victims of "something of value," *Wynn*, 684 F.3d at 478 – the value of the gift cards they had been deceived into purchasing. As described above, that was the whole point of the speed with which Chen operated and ordered his runners to operate: Chen knew that he was racing against the prospect that victims might have second thoughts and contact Walmart before he could transfer the value of their Walmart gift cards to brand-name cards beyond the store's control. The jury could easily find that Chen's actions – positioning his runners in Walmart parking lots in advance and then ordering them to redeem the gift cards as swiftly as possible – reflected an intent to prevent the victims from seeking refunds and instead secure the value of their cards for himself.

Finally, from the instructions Chen gave his runners, the jury could infer that Chen acted with a desire to deceive Walmart employees and law enforcement. For instance, after one of his runners was questioned by a Walmart employee while trying to redeem a card, Chen asked his supplier to send him a picture of a receipt for a Walmart gift card – not necessarily for the gift card in question, but for "any random" Walmart card that he could pass off as the one his runner wanted to redeem. J.A. 1613–15. And Chen instructed his runners that if they were caught by Walmart employees or law enforcement, they should lie – say they bought the Walmart cards from legitimate sources or show Walmart receipts

9

for other cards as faux proof of purchase. Chen argues that the stage of the scheme in which he directly participated involved no deception or misrepresentation, but the evidence would allow a jury to come to a different conclusion.

Viewing all this evidence in the light most favorable to the government, we can say that Chen knew of his suppliers' fraudulent acts, intentionally facilitated the deprivation of value at the core of the scheme, and instructed his accomplices to lie when necessary. Like the district court, J.A. 1684, we conclude the jury had ample evidence from which it could find, beyond a reasonable doubt, that Chen had the intent to defraud necessary to support his unauthorized access device fraud convictions. And because Chen's challenge to his associated conspiracy conviction for want of sufficient evidence rests on the same argument, that conviction stands as well.[4]

**B.**

---

[4] With respect to his conspiracy conviction, Chen also argues he is entitled to a new trial because of a material variance between the evidence adduced at trial and the conspiracy allegations in the indictment. According to Chen, the indictment alleged he was involved in one large conspiracy to commit unauthorized access device fraud, but at trial, the government only proved his involvement in multiple separate conspiracies. Chen is correct that a defendant may establish a material variance this way. *United States v. Kennedy*, 32 F.3d 876, 883 (4th Cir. 1994). But we need not pass on whether Chen can show such a variance. To be entitled to a new trial, Chen also would have to show that a material variance "infringed his 'substantial rights' and thereby resulted in actual prejudice." *Id.* Having carefully examined the record, we conclude that Chen, who was tried by himself rather than with his coconspirators, cannot show the required prejudice. *See id.* (explaining prejudice that may arise from a multiple conspiracy variance when a jury "transfer[s]" evidence from one defendant and separate conspiracy to a different defendant at the same trial).

We turn next to Chen's aggravated identity theft conviction, which arises from his attempt to make a purchase with information from an illegally obtained debit card.  Chen's illegal activities, recall, were not limited to the gift card scheme; he also worked with a different supplier to acquire people's debit card information.  And in the instance charged in his indictment, he used that information – inputting the victim's name and email address into an order form – in an effort to buy tires for himself.

The aggravated identity theft statute, 18 U.S.C. § 1028A(a)(1), criminalizes knowingly transferring, possessing, or using, without lawful authority, a means of identification of another person "during and in relation to" certain enumerated offenses, including conspiracy to commit unauthorized access device fraud, *see* 18 U.S.C. § 1028A(c)(4).  Here, the indictment alleges Chen committed aggravated identity theft when he used the debit card in question – a means of identification, *see id.* § 1028(d)(7)(D) – to purchase the tires "during and in relation to" his conspiracy to commit unauthorized access device fraud, which encompassed both the gift card scheme and his separate debit card dealings.

Chen's appeal of his aggravated identity theft conviction focuses on the "during and in relation to" element of the offense.  In *Dubin v. United States*, 143 S. Ct. 1557 (2023), the Supreme Court held that a defendant "'uses' another person's means of identification 'in relation to' a predicate offense [only] when this use is at the crux of what makes the conduct criminal." *Id.* at 1573.  Chen asserts that the district court erred in failing to instruct the jury on this standard, despite the fact that *Dubin* was decided several months before his

11

trial. And under the correct *Dubin* standard, he maintains, there was insufficient evidence to sustain his conviction.

While Chen is correct that the jury was not instructed on the *Dubin* standard, Chen raised no objection to that omission before the district court. Accordingly, we review this claim for plain error. *United States v. Said*, 26 F.4th 653, 660 (4th Cir. 2022). And under that standard, Chen can prevail only if he can show there was a "clear and obvious" error in the court's jury instructions; that the error "affected his substantial rights, meaning that it *affected the outcome of the district court proceedings*"; and that the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* at 660 & n.12 (internal quotation marks omitted); *United States v. Olano*, 507 U.S. 725, 732 (1993). We may assume that the absence of a *Dubin* instruction on the "in relation to" element of aggravated identity theft constituted a plain error.[5] Even so, Chen's argument fails on the other prongs of plain error review.

First, Chen cannot show that the failure to give a *Dubin* instruction affected the outcome of his trial. Contrary to Chen's claim, there was more than enough evidence to sustain his aggravated identity theft conviction under the *Dubin* standard. In *Dubin*, the Supreme Court held that using a patient's identifying information in connection with

---

[5] The government argues that *Dubin* applies only to charges of "using" a means of identification of another person, and not when, as here, a defendant also is charged with "transferring" or "possessing" a means of identification. *See Dubin*, 143 S. Ct. at 1570 (reasoning that "[t]ransfer" and "possess" connote the ordinary understanding of identity theft, in which use of the means of identification is at the crux of the criminality). Because we agree with the government that Chen cannot in any event satisfy the remaining prongs of plain error review, we need not address this threshold question.

Medicaid billing fraud did not constitute aggravated identity theft under § 1028A(a)(1), because the misuse of the identification was "merely an ancillary feature" of overbilling for medical services and not "at the crux" of the criminality. 143 S. Ct. at 1563, 1567. This case is just the opposite, falling well within the "ordinary understanding of identity theft." *Id.* at 1567. Here, Chen used "the means of identification itself" – the illegally obtained debit card – in an effort to "defraud or deceive," *id.* at 1568, inputting the victim's name and email address into the order form for the tires he was trying to buy because, as he told his supplier, he was "afraid it would not work" if he used his own identifying information, J.A. 852. The means of identification, in other words, played a "central role" in Chen's scheme, putting it "at the crux of the underlying criminality," *Dubin*, 143 S. Ct. at 1568: Chen's overt act in furtherance of his unauthorized access device fraud conspiracy. For that reason, Chen cannot show that a *Dubin* instruction would have led to a different jury verdict.

Second, Chen cannot satisfy the final prong of plain error review by showing that the failure to instruct on *Dubin*'s "crux" standard affected the "fairness, integrity or public reputation of judicial proceedings." *Said*, 26 F.4th at 660 n.12 (internal quotation marks omitted). Chen did not just fail to object to the district court's instructions on aggravated identity theft; he jointly, along with the government, proposed them. And as we have explained, in the context of plain error review, an error that was invited by a defendant in this way "cannot be viewed as one that affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Lespier*, 725 F.3d 437, 450 (4th Cir. 2013).

## C.

13

Next, we consider Chen's convictions for international promotion money laundering and conspiracy to commit that offense. The international promotion money laundering statute, 18 U.S.C. § 1956(a)(2)(A), makes it a crime to transfer funds into the United States from a place outside the United States "with the intent to promote the carrying on of specified unlawful activity." *Id*. More colloquially, § 1956(a)(2)(A) prohibits the practice of "plowing back" certain proceeds of specified unlawful activity to fund that same activity. *United States v. Heaps*, 39 F.3d 479, 486 (4th Cir. 1994), *abrogated on other grounds by United States v. Cabrales*, 524 U.S. 1 (1998). Chen was convicted of two counts of this offense, each stemming from a specific money transfer from one of Chen's buyers abroad into Chen's United States-based bank accounts. The indictment alleges that Chen initiated these two transfers with the intent to promote the carrying on of his conspiracy to commit unauthorized access device fraud – that is, to "plow back" the proceeds into his unlawful gift and debit card scheme. And based on all his dealings with his overseas buyers, Chen also was charged and convicted of conspiracy to commit international promotion money laundering under 18 U.S.C. § 1956(h).

Chen argues that we should vacate all these convictions because the evidence was insufficient to prove that the transfer of funds from his overseas buyers to his domestic bank accounts was intended to "promote the carrying on" of his gift card scheme.[6] As to Chen's two substantive money laundering convictions, we agree.

---

[6] Chen also argues, again, that the jury was improperly instructed on this element of the offense. Again, Chen failed to object to the relevant jury instructions before the district court and instead jointly proposed those instructions with the government. And again, even (Continued)

14

Under our precedent, the "intent to promote" element is proven "with evidence that the defendant *used* proceeds from an unlawful scheme to keep the scheme going." *United States v. Caplinger*, 339 F.3d 226, 233 (4th Cir. 2003). To prove such use, however, the government is not required to introduce "records documenting specific expenditures." *Id.* Instead, it can use circumstantial evidence, *see id.* – including evidence that the defendant otherwise "had insufficient legitimate income to produce the money used in" the unlawful activity, *United States v. Stewart*, 256 F.3d 231, 249 (4th Cir. 2001). And that, the government argues on appeal, is just what it did on trial: It proved that the legitimate income Chen earned while participating in the gift card scheme was nowhere close to the amount he needed to buy Walmart redemption codes from his suppliers, which came to over $1.1 million in a six-month period alone. In the government's view, that evidence allowed the jury to infer that Chen must have intended to use the money from the two overseas transfers at issue to keep his gift card scheme going.

The government is right that this kind of circumstantial evidence is generally sufficient to prove the requisite intent. The problem for the government is that at Chen's trial, it also introduced *direct* evidence regarding the funds at issue, and that evidence *negated* what otherwise would be a reasonable inference that the funds were destined for reinvestment into the gift card scheme. Specifically, the government submitted monthly bank statements from the United States bank accounts that received the money at issue. And from the month the overseas money entered those accounts to the month Chen's role

---

putting to one side those obstacles to review on appeal, we discern no error, plain or otherwise, in the relevant instructions.

15

in the gift card scheme ended, the money mostly sat in those accounts.   The only withdrawals from the accounts during this period were for small, incidental life expenses entirely unrelated to the gift card scheme.   Chen, it turns out, did not use any of *this* money – the specific funds underlying his two international promotion money laundering charges – to carry on his gift card scheme.

We have considered a similar case before.   In *United States v. Heaps*, we vacated a defendant's convictions for promotion money laundering where the direct evidence showed that after receiving the money at issue, the defendant placed it in a box in an apartment and left it there.   39 F.3d at 486.   Because the evidence established that "the money acquired through the [unlawful] payment was [not] itself used to promote an unlawful activity," we held, the government "failed to carry its burden in proving that the defendant intend[ed] to promote unlawful activity within the meaning of the statute." *Id.* Here, the government's own evidence showed that Chen's two bank accounts functioned just like the box in *Heaps* – the funds at issue in the two substantive § 1956(a)(2)(A) charges went into those accounts and then stayed there for the duration of Chen's participation in the gift card scheme.   So as in *Heaps*, we must reverse Chen's two convictions for international promotion money laundering under § 1956(a)(2)(A).

But we disagree with Chen that the same rationale requires vacating his conviction for conspiracy to commit money laundering under 18 U.S.C. § 1956(h).   Unlike the two substantive money laundering charges against Chen, the conspiracy charge is not tied to any specific money transfer or transfers.   Instead, it covers all of Chen's dealings with his gift card buyers abroad, which included multiple transactions, over a long period of time,

16

amounting to hundreds of thousands of dollars in name-brand gift cards sold by Chen for cash. Here, the government did not introduce bank statements or other direct evidence related to all these transactions. Instead, it relied, as it may, on the aforementioned circumstantial evidence of Chen's intent: that the amount of money Chen spent in furtherance of his role in the gift card scheme far exceeded his legitimate income. And based on that evidence, the jury could infer that "a portion of [these] proceeds were reinvested" into Chen's gift card scheme, and that Chen entered into an agreement with his buyers to commit international money laundering with the intent to promote his unauthorized access device fraud conspiracy. *See Stewart*, 256 F.3d at 250. We therefore affirm Chen's conviction for conspiracy to commit money laundering.

## D.

That brings us to the end of Chen's challenges to his convictions.[7] To summarize, we sustain Chen's convictions on all but the two charges of substantive international promotion money laundering, which appeared as counts 6 and 7 of Chen's indictment.

Chen also challenges the procedural propriety of the forfeiture order entered as part of his sentence, arguing that the district court failed to follow the order of operations set out in Rule 32.2 of the Federal Rules of Criminal Procedure. But under the sentencing

---

[7] Chen raises one additional claim on appeal, arguing that the district court abused its discretion with respect to an evidentiary ruling, allowing government agents to provide what Chen characterizes as hearsay and prejudicial testimony about matters of which they learned at the start of their investigation of the gift card scheme. We have reviewed the record and conclude that the district court acted well within its discretion in overruling Chen's objection to the testimony. J.A. 335, 338.

17

package doctrine, our vacatur of two of Chen's convictions voids his sentence "in its entirety." *United States v. Ventura*, 864 F.3d 301, 309 (4th Cir. 2017).  For that reason, we do not reach Chen's arguments regarding his forfeiture order.  On remand for resentencing, the district court is free to impose a new forfeiture order, if it sees fit, and thus to cure any procedural error in its original order.

## III.

For the foregoing reasons, we affirm Chen's convictions for unauthorized access device fraud and conspiracy to commit unauthorized device fraud, aggravated identity theft, and conspiracy to commit money laundering.  We reverse Chen's convictions for international promotion money laundering.  And we vacate Chen's sentence and remand for resentencing.

*AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED*

18